909 A.2d 757

IN THE MATTER OF A.S.

DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF–RESPONDENT, v. K.S., J.S., R.S. AND T.S., DEFENDANTS,IN THE MATTER OF THE GUARDIANSHIP OF A.S.

A LOVING CHOICE ADOPTION ASSOCIATES, MOVANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 11, 2006—Decided November 6, 2006.

Before Judges KESTIN, GRAVES and LIHOTZ.

*Barry D. Berman,* attorney for appellant.

*Stuart Rabner,* Attorney General, attorney for respondent (*Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Scott J. Kieserman,* Deputy Attorney General, on the brief).

*Yvonne Smith Segars,* Public Defender, Law Guardian for minor A.S. (*Cynthia McCulloch DiLeo,* Designated Counsel, of counsel and on the brief).

The opinion of the court was delivered by

LIHOTZ, J.T.C. (temporarily assigned).

Appellant, A Loving Choice Adoption Associates (ALCAA), appeals from the Family Part order denying its motion to intervene in protective services litigation filed by respondent, Division of Youth and Family Services (DYFS or the Division). The issue is whether a natural parent may surrender parental rights to an approved agency after having agreed to transfer custody of the child to another person, from whom the Division effectuated an emergency removal, which was later confirmed by an order granting the Division custody, care and supervision of the child. We find the natural parent's surrender was ineffective and, thus, we affirm.

K.S. is the natural mother of A.S. born on June 17, 2003. K.S. suffered from substance abuse, and the whereabouts of the child's natural father remain unknown. By order dated January 21, 2005, under Docket No. FD–13–1115–05A, K.S. consented to the grant of legal and physical custody of A.S. to her brother, R.S. and his wife, T.S.

On August 31, 2005, an anonymous referral to DYFS expressed concerns for the physical well-being of A.S. After an investigation, the Division's representative confirmed the concerns for the child's physical condition and was also presented with the desires of T.S. and R.S. to have the child removed. The custodians

additionally explained K.S. was contemplating the placement of A.S. for private adoption with a couple in Florida. That same day, DYFS executed an emergency removal of A.S., pursuant to *N.J.S.A.* 9:6–8.29.

On September 6, 2006, DYFS received a facsimile from counsel for the "the prospective adoptive parents of [A.S.]," who provided a copy of a document prepared by ALCAA, entitled "Birth Parent's Statement of Intent." The statement, signed by K.S. on August 2, 2005, expressed her desire to place A.S. for adoption with ALCAA. Counsel was advised DYFS had custody of the child and was looking for K.S. to notify her of the impending litigation.

Also on September 6, 2005, DYFS applied to the Family Part for "an order making the child a ward of the court and placing [her] under the care and supervision of the Division of Youth and Family Services." *N.J.S.A.* 30:4C–12. The court conducted a summary hearing after notice to T.S. and R.S., who both appeared. The whereabouts of the child's natural parents were unknown. DYFS sustained its burden to present credible evidence that the best interests of the child necessitated the emergent involuntary placement. *See N.J. Div. of Youth & Family Servs. v. J.Y.*, 352 *N.J.Super.* 245, 260–61, 800 *A.*2d 132 (App.Div. 2002). The court continued custody, care and supervision with DYFS and the return date was scheduled for September 22, 2005.

K.S. was in the offices of ALCAA on September 6, 2005, signing a surrender of custody of A.S., accompanied by a consent for adoption of the child, pursuant to *N.J.S.A.* 9:3–38(j). K.S. also expressed her desire to avoid the foster placement system when finding the child a permanent home.

ALCAA's motion, filed September 16, 2005, sought to intervene in the litigation and gain custody of A.S. based on K.S.'s surrender. Following argument and the submission of additional briefs, the motion judge issued an order, accompanied by a written decision, dated January 11, 2006, determining ALCAA was without standing to intervene because K.S.'s executed surrender to

ALCAA had no effect as "she attempted to give up a legal right she no longer possessed."

In its appeal, ALCAA maintains the motion judge erred, as K.S.'s surrender of the child for adoption to an approved agency supersedes DYFS's action and binds the court because the statute does not require the natural parent have custody, at the time the surrender is issued, in order to make it effective. Further, invoking the best interests of the child, ALCAA argues that K.S's wishes for her child to be placed for adoption through ALCAA must be safeguarded, despite the status of legal custody and the child's current placement.

■ The surrender executed by K.S. in favor of ALCAA was prepared to conform with *N.J.S.A.* 9:3–41. That statute provides, inter alia, that the instrument of surrender:

is a surrender of parental rights by the signatory and means the permanent end of the relationship and all contact between the parent and child. The approved agency shall advise the parent that the surrender shall constitute relinquishment of the person's parental rights in or guardianship or custody of the child named therein and consent by the person to adoption of the child.

. . . .

b. Any approved agency *may accept custody of a child* by a duly executed instrument of surrender from a parent. . . .

[*N.J.S.A.* 9:3–41 (emphasis added).]

Under its clear terms, the statute contemplates both the surrender of parental rights and the relinquishment of guardianship and custody. In this matter, K.S. had already transferred legal and physical custody of her daughter to T.S. and R.S., by order dated January 21, 2005. Thereafter, pursuant to its statutory authority, DYFS took emergency legal and physical custody of A.S., *N.J.S.A.* 9:6–8.29, and the Division's role as custodian of the child was reaffirmed by order of the court. *N.J.S.A.* 9:6–8.31. K.S. executed the "surrender" to ALCAA for the purpose of defeating the Division's authority. This is impermissible. K.S.'s execution of the surrender was without legal effect. At the time of her actions, she lacked custody of the child and, thus, lacked the capacity to surrender the child in derogation of DYFS's role. The trial court,

therefore, properly denied intervention, as ALCAA had no cognizable legal interest in the subject of the action. *R.* 4:33–1.

In child custody cases, it is not the parents' rights, but the welfare of the child that is the controlling consideration for the court. *Lavigne v. Family & Children's Soc'y.,* 11 *N.J.* 473, 479, 95 *A.*2d 6 (1953). The State, historically, in discharging its parens patriae role, has the responsibility to protect the welfare of children from the probability of serious physical, emotional or psychological harm resulting from the actions or omissions of their parents. *N.J. Div. of Youth & Family Servs. v. C.S.,* 367 *N.J.Super.* 76, 110, 842 *A.*2d 215 (App.Div.2004); *see N.J.S.A.* 9:6–8.8. To aid that objective, DYFS is authorized, upon receipt of a report of abuse or neglect of a child, to investigate and take immediate necessary action to insure the safety of the child. *N.J.S.A.* 9:6–8.11 and 9:6–8.18.

We are not persuaded by ALCAA's argument that once K.S. executed the surrender, ALCAA stood in the shoes of K.S. To allow intervention by ALCAA would usurp the State's authority to protect the interests of the child and the court's role in overseeing the Division's responsibility to supervise her care. The child has been in a stable placement home since September 1, 2005. Further delay in the proceedings, and the effect of that delay upon the child's development and stability, would manifestly impede the child's best interests, which are the primary consideration. *See N.J.S.A.* 9:6–8.8. We discern no misapplication of the Family Part's discretionary responsibility to superintend the State's efforts in safeguarding the child's safety, health or development.

Affirmed.